UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN LOMACK,<br><br>           Petitioner,<br><br>v.<br><br>L.E. SCRIBNER, Warden,<br><br>           Respondent. | Civil No. 07cv17-L(WMc)<br><br>**ORDER (1) ADOPTING REPORT AND RECOMMENDATION IN PART; (2) DENYING PETITION WITH RESPECT TO CLAIMS ONE THROUGH THREE; AND (3) REMANDING PETITION WITH RESPECT TO CLAIM FOUR** |

    Petitioner Kevin Lomack, a state prisoner proceeding *pro se*, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 ("Petition"). Petitioner claims his constitutional rights were violated by a jury instruction regarding eyewitness identification, ineffective assistance of counsel, trial court's failure to *sua sponte* counter the defense counsel's defective performance, and sentencing based on fact findings made by the judge rather than the jury. The case was referred to United States Magistrate Judge William McCurine, Jr. for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Civil Local Rule 72.1(d). The Magistrate Judge issued a Report and Recommendation, recommending the Petition be denied with respect to the first three claims and the action stayed with respect to claim four pending exhaustion of state court remedies. Petitioner objected. Respondent did not respond. For the reasons which follow, the Report and Recommendation is **ADOPTED IN PART.** The Petition is **DENIED** with respect to the first three claims, and **REMANDED** with respect to claim four.

In reviewing a magistrate judge's report and recommendation, the district court "shall make a *de novo* determination of those portions of the report . . . to which objection is made," and "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Under this statute, "the district judge must review the magistrate judge's findings and recommendations *de novo if objection is made, but not otherwise.*" *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir.) (*en banc*) (emphasis in original); *see Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1225-26 & n.5 (D. Ariz. 2003) (applying *Reyna-Tapia* to habeas review). Petitioner objects to the recommendation to deny the Petition with respect to the first three claims and to stay the action with respect to claim four. He also objects to many of the Magistrate Judge's findings in support of these recommendations. Upon performing the requisite *de novo* review, the court adopts the Report and Recommendation with respect to the first three claims, and remands it for further consideration with respect to the fourth claim.

On September 10, 2004, Petitioner was found guilty after a jury trial of twelve counts of robbery arising from eight separate incidents. The jury also found Petitioner used a gun during the robberies. Based on three prior felony convictions and enhancement for the firearm, Petitioner was sentenced to 335 years to life in state prison.

Petitioner first objects to the Report and Recommendation with respect to a witness-identification jury instruction. Twelve witnesses identified Petitioner prior to and at trial as the perpetrator. At trial, Petitioner presented expert testimony regarding how to consider eyewitness certainty in identification. (Resp't Lodgment ("Lodgment") Ex. 2 (Reporter's Transcript ("RT")) at 321-22; *see also* Report and Recommendation ("R&R") at 12). When the trial court instructed the jury, it included, among other things, CALJIC no. 2.92. (RT at 523-24.) Petitioner maintains that this instruction violated his right to due process, right to a fair trial and right to present witnesses under the Sixth and Fourteenth Amendments because it lowered the prosecution's burden of proof, unfairly undermined the defense expert testimony and reinforced a misconception that the witnesses who are more certain in identification are more accurate. In the last reasoned opinion, the California Court of Appeals held that the jury instruction did not

violate Petitioner's federal constitutional rights.  (Lodgment Ex. 5 at 11-15.)  The Magistrate Judge concurred.  (R&R at 9-13.)

Under the Antiterrorism and Effective Death Penalty Act of 1996, a state prisoner's habeas corpus petition in this court "may be granted only if he demonstrates that the state court decision denying relief was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007); 28 U.S.C. § 2254(d)(1).

Petitioner objects to the finding in the Report and Recommendation that the state court's decision that the jury instruction "was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on a unreasonable determination of the facts." (R&R at 13.) Petitioner argues the instruction substantially reduced the prosecution's burden of proof, allowed the jury to consider an invalid factor, undermined the defense expert's testimony, and had a substantial and injurious effect on the verdict. (Objections at 2-5.) The court disagrees.

"Not every ambiguity, inconsistency, or deficiency in a jury instruction rises to the level of a due process violation.  The question is whether the ailing instruction so infected the entire trial that the resulting conviction violates due process." *Middleton v. McNeil*, 541 U.S. 433, 437 (2004) (internal quotation marks, ellipses and citation omitted).  If the instruction, in the context of the jury charge as a whole, "is ambiguous, the question is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution." *Id.* (internal quotation marks and citations omitted).  When the jury instruction affects the burdens of proof, as argued by Petitioner, the clearly established federal law defines the issue as "whether a reasonable juror could have understood" the instruction "shifted to the defendant the burden of persuasion . . . once the State had proved the predicate facts." *Francis v. Franklin*, 471 U.S. 307, 316 (1985).  If so, the instruction violated due process and federal habeas relief is warranted. *Id.* at 326.

CALJIC No. 2.92, as given, states:

Eyewitness testimony has been received in this trial for the purpose of identifying

the defendant as the perpetrator of the crimes charged. In determining the weight to be given to the eyewitness identification testimony, you should consider the believability of the eyewitness, as well as other factors which should bear upon the accuracy of the witness' identification of the defendant, including, but not limited to, any of the following:

The opportunity of the witness to observe the alleged criminal act and the perpetrator of the act;

The stress, if any, to which the witness was subjected at the time of the observation;

The witness' ability, following the observation to provide a description of the perpetrator of the act;

The extent to which the defendant either fits or does not fit the description of the perpetrator previously given by the witness;

The cross-racial or ethnic nature of the identification;

The witness' capacity to make an identification;

Whether the witness was able to identify the alleged perpetrator in a photographic lineup;

The period of time between the alleged criminal act and the witness' identification;

Whether the witness had prior contacts with the alleged perpetrator;

**The extent to which the witness is either certain or uncertain of the identification**;

Whether the witness' identification is, in fact, the product of his or her recollection; and

Any other evidence relating to the witness' ability to make an identification.

(RT at 523-24 (emphasis added); *see also id*. at 376-77.) Petitioner's claim is based on the second to the last factor, "the extent to which the witness is either certain or uncertain of the identification." At trial on direct examination, Petitioner's expert was asked about the instruction:

> Q: There's a jury instruction which talks about having the jurors consider the degree of confidence that a witness has in their identification. Are you saying that that degree of confidence that the jurors are supposed to consider has no relationship to any fact?
>
> A: I'm saying that if that jury instruction says "Please consider this," I think it does need to be considered. But it doesn't say in what way do you consider it. I'm saying it needs to be considered as the end product of a long process. And if someone was uncertain at an earlier time -- let's say at a live lineup or a 6-pack,

>     and you were making a choice of somebody who was most like or resembles or similar to [*sic*], and then they come into court later and say, "That's the guy; I'm absolutely sure," both things have to be considered with respect to confidence.
>         Confidence is not something that should be considered just in terms of the end product. It certainly needs to be considered. I mean, obviously, if the witness said, "Well, gee, I don't know," you would have to consider that.
>         So, sure, you need to consider confidence. But it should not be considered in just a pure, simple "the more confident they are, the more accurate they are." That's not the way it should be considered. So **I'm not saying anything different than the instruction**. I'm simply saying that, yes, it should be considered and' hopefully, I'm providing some information that if it's chosen to be -- if anyone chooses to use it, it might be useful to evaluate confidence.

(RT at 321-22 (emphasis added).)

The state court determined that the instruction given was not only lawful but recommended under California law. (Lodgment Ex. 5 at 11-14.) Upon analysis of the defense expert's testimony, the court also found that the instruction did not detract from it and did not affect the prosecution's burden of proof. (*Id*. at 14-15.) The Magistrate Judge analyzed the instruction and the defense expert testimony in light of the clearly established federal law, and concluded the state court determination "was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on a unreasonable determination of the facts." (R&R at 11-13.)

Based solely on Justice Mosk's dissent in *People v. Wright*, 45 Cal.3d 1126, 1159 (1988), Petitioner argues that witness confidence is an invalid factor for consideration. However, a dissenting opinion is not binding legal authority. Furthermore, the state court found witness confidence to be a valid factor, and CALJIC 2.92 as a whole a valid jury instruction under California law. (Lodgment Ex. 5 at 12-13.) The court does not address the issue whether the state court erred when it held that the jury instruction was valid under California law. This issue is outside federal habeas review. "[F]ederal habeas corpus relief does not lie for errors of state law. . . . [I]t is not the province of a federal habeas court to reexamine state-court determinations of state-law questions." *Estelle v. McGuire*, 502 U.S. 62, 68 (1991). "In conducting habeas review, a federal court is limited to deciding whether the [state court proceedings] violated [a state prisoner's rights under] the Constitution, laws, or treaties of the United States." *Id*. at 67.

/ / / / /

Petitioner does not explain how the instruction, with or without his expert's testimony, lowered the prosecution's burden of proof so as to violate his federal constitutional rights. Upon review of the instruction in the context of the charge as a whole and the pertinent expert testimony, the record does not support Petitioner's assertion, because a reasonable juror would not have understood or applied the instruction to shift the burdens of proof or even to lower the prosecution's burden. *See Francis*, 471 U.S. at 316; *Middleton*, 541 U.S. at 437.

Petitioner therefore does not present any binding legal authority or evidence to show that witness confidence is an invalid or unconstitutional factor for consideration. Moreover, his own expert testified to the contrary and said that witness confidence should be considered. The expert further testified that he was "not saying anything different than the instruction." He opined that if the jury is instructed to consider confidence, they should do it. He told the jury that the instruction does not explain how to consider confidence, and then proceeded to explain how the jury should do it. Accordingly, the instruction in no way undermined the defense expert's testimony. Petitioner failed to establish an instructional error of any kind, much less that the alleged error so infected the entire trial that the resulting conviction violates due process. *See Francis*, 471 U.S. at 316; *Middleton*, 541 U.S. at 437.

Although the state court did not cite any clearly established federal law in reaching its decision, neither its reasoning nor the result reached contradicts clearly established federal law discussed above. Accordingly, the state court decision on the first claim is not contrary to and does not involve an unreasonable application of clearly established federal law. *See Early v. Packer*, 537 U.S. 3, 8 (2002); 28 U.S.C. § 2254(d)(1). To the extent the state court decision involved a determination of facts, the determination was not unreasonable in light of the evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d)(2). The recommendation to deny Petitioner's first claim is therefore adopted.

Petitioner next objects to the finding in the Report and Recommendation that the state court's adjudication of his ineffective assistance claim was "was neither contrary to, nor involved an unreasonable application of, clearly established federal law, and was not based on an unreasonable determination of facts." (R&R at 17-18.) He argues that his counsel's error in

analogizing proof beyond a reasonable doubt to the decision to marry was prejudicial so as to amount to ineffective assistance of counsel in violation of the Sixth Amendment. Based on the application of *Strickland v. Washington*, 466 U.S. 668 (1984), the state court found that although the analogy was erroneous, Petitioner did not receive ineffective assistance of counsel because he was not prejudiced. (Lodgment Ex. 5 at 15-20.)

On the issue of ineffective assistance of counsel, *Strickland* "has long been clearly established federal law determined by the Supreme Court of the United States." *Baylor v. Estelle*, 94 F.3d 1321, 1323 (9th Cir. 1996). To prevail on an ineffective assistance claim, a petitioner must show his counsel committed "errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Specifically, he must show "counsel's representation fell below an objective standard of reasonableness," and "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. Because Petitioner is challenging his conviction, the appropriate question is "whether there is a reasonable probability that, absent the error[], the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

In closing argument the defense counsel analogized proof beyond a reasonable doubt with the level of certainty in making the decision to marry. The state court found this was an erroneous explanation of the standard of proof under California law. (Lodgment Ex. 5 at 17-18.) However, applying *Strickland* and upon review of the record as a whole, the state court found the error was not prejudicial and therefore did not result in a constitutional violation. (*Id*. at 16, 19-20.) The Magistrate Judge found the state court's decision was neither contrary to, nor involved an unreasonable application of *Strickland*, and was not based on an unreasonable determination of facts. (R&R at 16-18.)

Petitioner objects to the Report and Recommendation on the grounds that he was prejudiced by his counsel's performance because the prosecution's case against him was weak and the jurors who were inclined to side with the defense were misled by the closing argument. (Objections at 6-7.) The court disagrees.

Prior to closing argument the court instructed the jury:

> If anything concerning the law said by the attorneys in their arguments or at any other time during the trial conflicts with my instruction on the law, you must follow my instructions.

(RT at 515.) The court subsequently instructed the jury on proof beyond a reasonable doubt:

> A defendant in a criminal action is presumed to be innocent until contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to a verdict of not guilty. This presumption places upon the People the burden of proving him guilty beyond a reasonable doubt.
> Reasonable doubt is defined as follows. It is not a mere possible doubt, because everything relating to human affairs is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction of the truth of the charge.
> The burden is on the People to prove beyond a reasonable doubt the defendant is the person who committed the crime with which he is charged.

(*Id*. at 522-23.) Immediately before the closing arguments the court reiterated:

> If there is a discrepancy with the law as argued by counsel and the law that I have just given you, you will be guided by my instructions on the law.

(*Id*. at 529.) The jurors received a copy of the instructions to take into the deliberation room. (*See id*. at 528.)

The court's instructions countered any confusion regarding the proof beyond a reasonable doubt defense counsel may have created in his argument, and a reasonable juror would have understood the instructions.

> The Court presumes that jurors, conscious of the gravity of their task, attend closely the particular language of the trial court's instructions in a criminal case and strive to understand, make sense of, and follow the instructions given them. Absent . . . extraordinary situations, . . . we adhere to the crucial assumption underlying our constitutional system of trial by jury that jurors carefully follow instructions.

*Francis*, 471 U.S. at 324 n.9. If any jurors were confused, the record does not support it. "A reasonable juror . . . would have sought to make sense of [conflicting instructions] not only at the initial moment of hearing them but also later in the jury room after having heard the entire charge." *Id*. at 321 n.7. Although the jurors sent notes during deliberations, they requested to view the gun used in the charged robberies (Lodgment Ex. 5 at 20 n.10) and inquired about

/ / / / /

cross-admissibility of evidence of one robbery count for the use in another robbery count (RT at 568). The jurors had no questions regarding proof beyond a reasonable doubt.

The court considers the relative strength of the prosecution's case in analyzing whether the counsel's error prejudiced Petitioner. *See Luna v. Cambra*, 306 F.3d 954, 966 (9th Cir. 2002), *as amended at* 311 F.3d 928. Petitioner contends the prosecution's case was not overwhelming and there was room for reasonable doubt. (Objections at 6-7.) This assertion is not supported by the record of the evidence presented at trial.

For the foregoing reasons, the state court decision as to the second claim is not contrary to and did not involve an unreasonable application of clearly established federal law. *See* 28 U.S.C. § 2254(d)(1). To the extent the state court decision involved a determination of facts, the determination was not unreasonable in light of the evidence presented in the state court proceeding. *See id*. § 2254(d)(2). The recommendation to deny Petitioner's second claim is therefore adopted.

Petitioner next objects to the recommendation that habeas relief be denied as to his third claim that the trial court violated his due process rights because it failed *sua sponte* to correct the defense counsel's erroneous explanation of proof beyond a reasonable doubt. (Objections at 7-8.) The state appellate court reasoned, "Although defense counsel erred by comparing the beyond a reasonable doubt standard to the decision to marry, the error was not prejudicial. Because no prejudice is shown, we also need not consider whether the court erred by failing to correct defense counsel's error." (Lodgment Ex. 5 at 19.) Petitioner argues that the state court failed to apply clearly established federal harmless error law and that the error was not harmless because the prosecution's case was weak. (Objections at 7-8.) Petitioner's argument assumes that the trial judge's failure to *sua sponte* correct the defense counsel's error was a due process violation under the Sixth and Fourteenth Amendments, depriving him of his right to a fair trial. (*See id*. at 8.) The court disagrees with this assumption.

Although the Constitution guarantees a fair trial through the Due Process Clause, "it defines the basic elements of a fair trial largely through the several provisions of the Sixth Amendment." *Strickland*, 466 U.S. at 684-85. The Sixth Amendment guarantees a defendant

> the right to a speedy and public trial, by an impartial jury . . ., to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the assistance of counsel in his defence.

U.S. Const. amend. VI. Petitioner does not specify which of several provisions of the Sixth Amendment were allegedly violated. In the underlying Petition and Traverse, Petitioner argued the trial court had a duty to properly instruct the jury on the burden of proof, among other things. As discussed above in the context of the ineffective assistance claim, the trial court fulfilled that duty.

Petitioner cites to no Supreme Court case law supporting a finding of a constitutional violation in the circumstances similar to the instant case, and this court's research has found none. The state court decision, concluding Petitioner's constitutional rights were not violated, was therefore not contrary to, or an unreasonable application of, clearly-established federal law as determined by the Supreme Court. *See Stevenson v. Lewis*, 384 F.3d 1069, 1072 (9th Cir. 2004).

Because the court finds no constitutional error, the court need not engage in the harmless error analysis. *See Brecht v. Abrahamson,* 507 U.S. 619, 622 (1993) (harmless error analysis applies to the inquiry whether a conviction must be set aside because of a federal constitutional error); *Burks v. Borg*, 27 F.3d 1424, 1432 n.6 (9th Cir. 1994); *see also Estelle*, 502 U.S. at 67.

Although the state court did not cite any clearly established federal law in reaching its decision, neither its reasoning nor the result it reached contradicts clearly established federal law. Accordingly, the state court decision with respect to the third claim is not contrary to and did not involve an unreasonable application of clearly established federal law. *See Early*, 537 U.S. at 8; 28 U.S.C. § 2254(d)(1). The recommendation to deny Petitioner's third claim is therefore adopted.

Last, Petitioner objects to the finding that his fourth claim regarding sentencing is unexhausted, and to the recommendation that the case be stayed while he exhausts it in state court. Due to the intervening change in the law, which superseded the reasoning of the Report and Recommendation, the Petition is remanded for reconsideration of the fourth claim.

Petitioner was sentenced to 335 years to life in prison. In pertinent part, the sentence included the upper term for each robbery count. While sentences for eight counts were set to run consecutively, reflecting eight separate incidents, four counts, reflecting additional victims of the same incidents, were set to run concurrently. (RT at 600-07; Lodgment Ex. 5 at 8.) In deciding to impose the upper term, the court considered several aggravating circumstances under California law, including Petitioner's prior convictions. (RT at 603-04.)

Petitioner argues the imposition of upper terms and consecutive sentences violated his right to a jury trial as articulated in *Blakely v. Washington*, 542 U.S. 296 (2004), because it was based on factors which were not found by the jury beyond a reasonable doubt. Based on *Blakely*, *United States v. Booker*, 543 U.S. 220 (2005) and *People v. Black*, 35 Cal.4th 1238 (2005) ("*Black I*"), the state court concluded that Petitioner's right to a jury trial was not violated because the choice of an upper term under the California sentencing scheme, which provides the choice of a lower, middle and upper term, does not implicate the Sixth Amendment. (Lodgment Ex. 5 at 25-28.) The court also noted that the upper term was imposed based in part on his prior criminal record, a factor which does not require a jury finding. (*Id.*, citing *Blakely*, 542 U.S. at 301.)

After the state court decision in this case, the defendant in *Black I* filed a petition for a writ of certiorari in the United States Supreme Court. On January 22, 2007, the United States Supreme Court decided *Cunningham v. California*, 127 S. Ct. 856 (2007), which held that because the California sentencing scheme authorizes the judge, not the jury, to find the facts permitting the imposition of the upper term, the system runs afoul of the Sixth Amendment. This decision was contrary to the California Supreme Court's decision in *Black I*. On February 20, 2007, the United States Supreme Court granted the writ of certiorari in *Black I*, and remanded the case to the California Supreme Court for reconsideration in light of *Cunningham*. *Black v. California*, 127 S. Ct. 1210 (2007). This was the state of the law when the Magistrate Judge issued the Report and Recommendation in this case.

The Report and Recommendation found, based on the intervening decision in *Cunningham*, that Petitioner's sentencing claim was rendered unexhausted. (R&R at 25-27.) It

reasoned that a claim can become unexhausted when intervening change in federal law "casts the claim in a fundamentally different light." (*Id*. at 27, citing *Picard v. Connor*, 404 U.S. 270, 276 (1971); *see also id.* n.5 and cases cited therein.) It concluded that *Cunningham* cast Petitioner's claim in a fundamentally different light. (*Id*. at 27.) In light of *Cunningham*, California Supreme Court had ordered expedited review on a number of cases raising the same or similar issues as those raised in the Petition. (*See id*. at 26.) Because it was not clear how California courts would adjudicate Petitioner's sentencing claim based on the new state of the law, the Report and Recommendation found that state court remedies remained available to Petitioner. (*Id*. at 26, citing 28 U.S.C. § 2254(c); *id*. at 36, citing 28 U.S.C. § 2254(b)(1).) The Report and Recommendation therefore found the sentencing claim unexhausted and recommended staying this action while Petitioner exhausts it in state courts. (*Id*. at 36.)

Petitioner objects to the Report and Recommendation, arguing that his sentencing claim was exhausted because he fairly presented it to the state court. (Objections at 9.) In the alternative, he argues his claim was not rendered unexhausted, because *Cunningham* did not cast it in a fundamentally different light. (*Id*. at 10-12.) Petitioner maintains that *Cunningham* merely applied *Blakely* to the California sentencing scheme, the same federal precedent considered by the state court at sentencing and on appeal. (*Id*.) According to Petitioner, he did not prevail in the state court because *Black I* was in error. (*Id*. at 11.)

Shortly after Petitioner's Objections were filed, the California Supreme Court reconsidered *Black I* on remand from the United States Supreme Court. *People v. Black*, 41 Cal. 4th 799 (2007), cert. den. __ S. Ct. __; 2008 WL 114084 (Jan. 14, 2008) (*Black II*). In *Black II*, the California Supreme Court held that "imposition of the upper term does not infringe upon the defendant's constitutional right to jury trial so long as one legally sufficient aggravating circumstance has been found to exist by the jury, has been admitted by the defendant, or is justified based upon the defendant's record of prior convictions." *Id*. at 816; *see also id*. at 806, 812-16, 816-820. The court reasoned that under California law "the existence of a single aggravating circumstance is legally sufficient to make a defendant eligible for the upper term." *Id*. at 813. A defendant's criminal history alone renders him eligible for the upper term sentence

under California law. *Id*. at 818. The court further held that the line of Sixth Amendment cases culminating in *Cunningham* does not apply to the imposition of consecutive terms. *Id*. at 806, 820-23.

*Black II* answers the question, unanswered at the time of the Report and Recommendation, how California courts would adjudicate Petitioner's sentencing claim. The rationale relied upon by the Magistrate Judge for finding the claim unexhausted therefore no longer exists. Accordingly, the fourth claim is remanded to the Magistrate Judge for further briefing and consideration of exhaustion and, if appropriate, the merits of claim four.

For the foregoing reasons, the Report and Recommendation is **ADOPTED IN PART**. The Petition is **DENIED** with respect to the first three claims and **REMANDED** to the Magistrate Judge for a report and recommendation with respect to the fourth claim.

**IT IS SO ORDERED**.

DATED: February 21, 2008

M. James Lorenz
United States District Court Judge

COPY TO:

HON. WILLIAM McCURINE, Jr.
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL